UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES,                    )
                                  )
          v.                      )    CRIMINAL NO. 97-10269-PBS
                                  )
ANTHONY BUCCI,                    )
     Defendant/Petitioner,        )
                                  )

MEMORANDUM AND ORDER
August 11, 2009

SARIS, D.J.

I.    INTRODUCTION

On November 12, 2008, defendant/petitioner Anthony Bucci,
("Bucci") filed a petition for writ of coram nobis challenging
his waiver of indictment and his guilty plea on an expired
federal sentence imposed by this Court in the instant action
(hereinafter "Bucci I").  On March 27, 2009, the United States
filed an Opposition to the petition (Docket No. 42), and on June
8, 2009, Bucci filed a Reply/Response (Docket No. 45)
supplementing the record.  Thereafter, on June 16, 2009, the
United States filed a Motion for an Extension of Time to File a
Sur-Reply (Docket No. 46), which was allowed by Electronic Order
on June 17, 2009.  On June 29, 2009, Bucci filed an Opposition to
the Motion for an Extension of Time (Docket No. 48) contending
that he did not raise additional issues in his Reply/Response,
and asserting Government misconduct.  On June 30, 2009, the
United States filed a Sur-Reply (Docket No. 47).

A.   <u>Bucci I</u>

The background of the criminal case that is the subject of the instant petition is summarized as follows:

On January 10, 1997 the United States filed a criminal Complaint against Bucci, charging him with knowingly and intentionally combining, conspiring, and agreeing with others to possess with intent to distribute a quantity of marijuana, in violation of 21 U.S.C. § 846, and criminal forfeiture, under 21 U.S.C. § 853(f).  On January 13, 1997, Bucci had an initial appearance before United States Magistrate Judge Marianne B. Bowler, and was represented by retained counsel, Attorney Michael Pinelli.  Thereafter, on February 3, 1997, Attorney Pinelli withdrew from the case, and Attorney Joseph Oteri filed an appearance on behalf of Bucci.  On May 30, 1997, a detention hearing was held, at which time Bucci waived detention reserving his right to a hearing at a later date.  A hearing was held on October 2, 1997, at which time Bucci was released on conditions of release.  On October 21, 1997, a hearing was held regarding Bucci's violation of his conditions of release, at which time he agreed to voluntary detention.

That same day, a two-count felony Information was filed with this Court.  Earlier, on October 2, 1997, Bucci had signed a written plea agreement.  That plea agreement was filed in Court on November 3, 1997.  Plea Agreement (Docket No. 23).  Attached

2

to the plea agreement was a copy of the Information.  The plea
agreement provided that Bucci would waive indictment and plead
guilty to all counts of the Information, which contained the same
charges as the Complaint (*i.e.*, Count One charged conspiracy to
distribute marijuana and Count Two charged criminal forfeiture).

Contemporaneous to the filing of the plea agreement on
November 3, 1997, a Rule 11 hearing was held before this Court,
at which time Bucci pled guilty to both Counts, after signing a
Waiver of Indictment ("Waiver")(Docket No. 22).  Before signing
the Waiver, the Court addressed Bucci concerning his rights, and
Bucci assured the Court that he understood he was giving up the
right to a grand jury indictment.  The written Waiver contains
the signatures of Bucci and his counsel, Mr. Oteri; however, the
Waiver does not specify the charges against Bucci.  Id.

After the Waiver was signed, Bucci pled guilty to both
Counts.  Before accepting the guilty plea, this Court engaged in
a comprehensive Rule 11 plea colloquy with Bucci, to ensure that
he was knowingly and voluntarily entering into a guilty plea, and
to ensure that there was an evidentiary basis for the plea.  At
that time Bucci affirmed that his counsel had been satisfactory
and that no person had pressured him into pleading guilty.  Bucci
also indicated that he understood the trial rights he was giving
up by pleading guilty.  After a discussion with his attorney and
upon some clarification to the Court, he admitted the conduct

3

described by the Government forming the basis of the criminal
charges.

Satisfied that Bucci's plea was knowing and voluntary, this
Court accepted his guilty plea and set a sentencing date.  On
January 28, 1998, this Court sentenced Bucci to, *inter alia*, 41
months in prison.  Judgment (Docket No. 28).

B.   Bucci II

Subsequently, on May 20, 2004, Bucci was charged in another
federal criminal case with drug trafficking, possession and
distribution charges in violation of 21 U.S.C. § 846, 21 U.S.C.
§ 841(a)(1), and firearms charges in violation of 18 U.S.C.
§ 924(c)(1)(A).  See United States v. Bucci, Criminal No. 04-
10194-RCL (hereinafter "Bucci II").  On July 16, 2004, the
Government filed an Information to establish that Bucci had
previously been convicted of a felony drug offense, through his
plea of guilty in Bucci I.  Bucci II went to trial before United
States District Judge Reginald C. Lindsay, and a jury found Bucci
guilty on all five counts on May 20, 2006.  Because of the
conviction in Bucci I, Bucci's Criminal History Category was
determined to be Category II, and his sentencing guideline
imprisonment range was 168-210 months.

On November 15, 2006, Bucci was sentenced to 168 months on
the drug counts followed by 84 months on the 924(c) firearm
count, totaling 252 months.  Judgment (Docket No. 356).  Bucci

4

appealed, and the United States Court of Appeals for the First Circuit affirmed.  Mandate (Docket No. 393); Mandate (Docket No. 396)(granting the motion for summary disposition and dismissing the appeal without prejudice to Bucci's rights to seek collateral relief).  Bucci currently is in custody serving this sentence.

On May 12, 2009, Bucci filed a Motion to Vacate under 28 U.S.C. §2255 (Docket No. 398).  This motion is currently pending.

C.   <u>The Instant Coram Nobis Petition</u>

Bucci asserts a number of grounds in support of his petition for writ of coram nobis, both in his original petition and in his Reply/Response to the Government's Opposition.  First, he challenges the validity of the Waiver, and contends that this Court should not have accepted his guilty plea because the Waiver executed by him was defective under Fed. R. Crim. P. 7(b) (providing that an offense punishable by imprisonment for more than one year may be prosecuted by information if the defendant -- in open court and after being advised of the nature of the charge and the defendant's rights -- waives prosecution by indictment).  Specifically, he claims the Waiver was invalid because it did not set forth the criminal charges nor was it accompanied by a copy of the Information.  Second, he claims that he did not understand his rights in executing the Waiver because this Court failed to inquire as to his understanding of the Waiver, and because he was not sworn until after he executed the

Waiver.  Third, he argues that his guilty plea was not knowing and voluntary because he was pressured into entering into a plea agreement by both his defense counsel, Joseph Oteri, and the Assistant United States Attorney, Geoffrey Hobart.  He claims that he was threatened that his mother would be criminally prosecuted on money laundering charges if he did not plead guilty.[1]  He also claims that this marijuana charge was trumped-up by the Government in order to coerce him into cooperating with the investigation into the disappearance of one Aislan Sylva. See Reply/Response (Docket No. 45).  Finally, Bucci claims that his petition presents extraordinary and compelling circumstances warranting coram nobis relief because he is a lay person unskilled in the law, and as such he was unaware that he could have challenged his conviction or sentence pursuant to 28 U.S.C. § 2255, nor did he realize that something was wrong with his conviction until after he was sentenced in Bucci II and designated to FCI Loretto, at which time he met with a law library paralegal who opined that the Waiver form was defective.

In its Opposition (Docket No. 42), the United States argues that coram nobis relief should be denied because: (1) the coram nobis vehicle for attacking a final judgment is not available to

---

[1]Bucci alleges that Attorney Oteri told him not to contest the Government's version of the facts at the plea hearing, or to tell the Court that he was innocent or was pleading guilty to save his mother from criminal prosecution, because the Court would not accept a guilty plea under those conditions.

Bucci as he currently is in custody and his only method of relief was through 28 U.S.C. § 2255 (as to which he is time-barred), citing Trenkler v. United States, 536 F.3d 85, 98 (1st Cir. 2008); (2) even if § 2255 relief were unavailable because Bucci has finished serving his sentence on this case and is in custody only by virtue of his subsequent conviction in Bucci II, he is barred from seeking coram nobis relief because Bucci has presented no sound reason for his failure to seek appropriate relief at an earlier point; and (3) coram nobis relief is not appropriate based on the lack of merit of Bucci's claims.

In his Reply to the Government's Opposition, Bucci argues that the case authority cited by the Government is distinguishable from the instant action because: (1) those cases involved petitioners who were properly indicted and convicted when they resorted to the writ of coram nobis to challenge their conviction, and (2) those cases involved petitioners who were trying to circumvent the gate-keeping mechanisms imposed by Congress with respect to review of final judgments of conviction and sentence.  He contends that this is not the case here, as he has completed serving his sentence in Bucci I.

In the Sur-Reply, the Government reasserts its contention that the Waiver was valid, knowing, and in accordance with the requirements of Rule 7 of the Federal Rules of Criminal

Procedure.[2]  The Government also asserts that Bucci's original

ground for seeking coram nobis relief was his challenge to the

Waiver, and not his claim that his mother would be indicted if he

did not plead guilty.  The Government contends Bucci should not

be allowed to change his position at this late date.  Next, the

Government asserts that even if Bucci were permitted to raise

this claim late, he has failed to show that the Government lacked

a good faith belief that his mother could have been charged with

money laundering.  The Government points out that at the plea

hearing, his mother was present in the courtroom and did not

interpose any objection to the contention that the money in the

---

[2]Although Bucci contends that the Bench Rules were not followed,
the Government contends, rightly so, that it is the Federal Rules
of Criminal Procedure and the United States Constitution that
govern the issue.  The Government also contends that Bucci's
position that the Court failed to ask him specifically whether
anyone had made any promises or threats to him with respect to
his plea at the time the Waiver of Indictment was executed, does
not support his claim for coram nobis relief because Bucci failed
to raise the issue at the time of the plea colloquy when the
Court specifically asked Bucci whether anyone had made any
promises or threats to him with respect to the plea, and he
answered in the negative.  Transcript. at 10.  Further, the
Government distinguishes the case law relied upon by Bucci, Smith
v. United States, 360 U.S. 1 (1959), which Bucci uses to support
his position that it was never in his interest to waive
indictment under threat.  Smith held that, under the Fifth
Amendment, where an offense might have been punished by death or
involved an infamous crime, the United States Attorney did not
have authority to file an information, and the convicting court
lacked jurisdiction to hear the criminal case absent a
presentment or indictment of a Grand Jury.  This case is not a
capital case, and thus Smith is not controlling or persuasive
here.

safe deposit box held in her name was Bucci's drug proceeds;
moreover, Bucci expressly admitted under oath that this was the
case.  Additionally, the Affidavit in support of the criminal
Complaint recited that two cooperating individuals involved with
Bucci in dealing drugs sometimes needed loans, and Bucci told
them that in order to get the funds, he needed to have his mother
get the money from a safe deposit box.  Sur-Reply (Docket No. 47
at 3, citing Complaint Affidavit, ¶ 16).  The Government contends
that there was nothing improper by telling Bucci that another
family member or associate might be indicted if he did not plead
guilty, so long as the Government had a good faith belief that
the family member had committed a crime.  United States v.
Buckley, 847 F.2d 991, 1000 n.6 (1st Cir. 1988).  Moreover, the
Government contends that Bucci's recitation of his discussion
with a prison paralegal concerning his purported discovery of his
legal claim is unsworn and should be disregarded by the Court
entirely.

     Further, the Government contends that Bucci raised, only in
his reply and not in his original petition, the issue of his
attorney's representation, by claiming that his attorney did not
have him read the plea agreement on October 2, 1997, but instead
had him sign it in a hurry.  This claim is raised to support
Bucci's contention that he was not aware of the charges against
him.  The Government argues that the Information was attached to

9

the plea agreement, and that Bucci's allegation is inherently incredible, and belied by his conduct at the plea hearing.

Additionally, the Government contends that Bucci's allegations that defense counsel advised him not to tell the Court about the alleged "threat" to prosecute his mother, despite his wish to tell the Court, is also belied by the transcript of the plea hearing indicating that Attorney Oteri actually advised Bucci to tell the Court what was on his mind.  The Government also contends that rather than the issue of his mother's prosecution, what was really the subject of consultation with counsel was that Bucci was admitting to participating in the sale of only a limited amount of marijuana.

Finally, the Government takes issue with Bucci's contention that it acted improperly when it filed an Information pursuant to 18 U.S.C. § 851 (Proceedings to establish prior convictions; Information filed by the United States Attorney), and that it resulted in an increase in his minimum mandatory term of imprisonment, thereby constituting a "collateral consequence" with respect to his sentence in Bucci II.  The Government contends that the § 851 information had no effect on his sentence in Bucci II; the only impact was that Bucci was placed in a Criminal History Category II rather than I, resulting in a guideline sentence range in Bucci II of 168-210 months rather than 151-188 months.  Bucci received 168 months for the drug

conviction (and a mandatory consecutive term of 168 months for
the § 924(c) conviction).  Thus, the Government submits that his
sentence in <u>Bucci II</u> fell within <u>both</u> guideline ranges, and
therefore it is possible he would have received the same sentence
without the conviction in <u>Bucci I</u>, in effect, resulting in no
adverse collateral consequences as a result of <u>Bucci I</u>.

II.  DISCUSSION

   A.   <u>Bucci's Objection to the Sur-Reply</u>

       As a threshold matter, the Court has reconsidered the grant
of leave to file a Sur-Reply, in view of Bucci's Objection.
Nevertheless, the Court does not find Bucci's arguments to
militate against the filing of a Sur-Reply, and therefore
overrules the Objection.  The Sur-Reply provides relevant and
useful propositions for the Court's determination of the merits
of Bucci's coram nobis petition, and will be considered here.

   B.   <u>Availability of Coram Nobis Relief</u>

       A writ of coram nobis is a common-law remedy used to correct
errors of fact, and a petition for the writ brings before the
court that rendered the judgment under attack matters of fact
which, if known at the time of judgment, would have prevented its
rendition.[3]  See <u>Spaulding v. United States</u>, 155 F.2d 919, 921

---

[3]Coram nobis is used to attack a judgment that is infirm at the
time it was rendered for reasons which later are discovered, as
compared with a petition for writ of audita querela, which is
used to attack a judgment that was correct at the time it was
rendered but is rendered infirm by matters that arise after its

(6th Cir. 1946).   Although writs of coram nobis (and audita
querela) have been formally abolished in civil cases, <u>see</u> Fed. R.
Civ. P. Rule 60(b), courts have held that the All Writs Act, 28
U.S.C. § 1651,[4] preserved the use of both of these writs in very
limited circumstances with respect to criminal convictions.   <u>Tran</u>
<u>v. United States</u>, 45 F. Supp. 2d 157, 159-60 (D. P.R. 1999); <u>see</u>
<u>United States v. Morgan</u>, 346 U.S. 502, 506 n.4 (1954); <u>United</u>
<u>States v. Holder</u>, 936 F.2d 1, 5 (1st Cir. 1991).   "[T]he writ of
coram nobis is an unusual legal animal that courts will use to
set aside a criminal judgment of conviction only 'under
circumstances compelling such action to achieve justice.'   Those
circumstances include an explanation of why a coram nobis
petitioner did not earlier seek relief from the judgment; a
showing that the petitioner continues to suffer significant
collateral consequences from the judgment; and a demonstration
that an error of 'the most fundamental character' ... occurred."

---

rendition.   <u>Tavares v. Massachusetts</u>, 59 F. Supp. 2d 152, 154 (D.
Mass. 1999). (citing <u>United States v. Reyes</u>, 945 F.2d 862 (5th
Cir. 1991)).

[4]The All Writs Act provides:

> The Supreme Court and all courts established by Act of
> Congress may issue all writs necessary or appropriate in aid
> of their respective jurisdictions and agreeable to the
> usages and principles of law.

28 U.S.C. § 1651(a).

Hager v. United States, 993 F.2d 4, 5 (1st Cir. 1993)(quoting

United States v. Morgan, 346 U.S. 502, 511-12). See

Barreto-Barreto v. United States, 551 F.3d 95, 103 (1st Cir.

2008); United States v. Sawyer, 239 F.3d 31, 38 (1st Cir.

2001)(discussing history of coram nobis relief).  The United

States Supreme Court has recently reiterated the notion that

coram nobis relief may be used only in extraordinary and

compelling circumstances.  See United States v. Denedo, 129 S.Ct.

2213, 2223 (Jun. 8, 2009)("No doubt, judgment finality is not to

be lightly cast aside; and courts must be cautious so that the

extraordinary remedy of coram nobis issues only in extreme

cases.").

In addition to this restriction, Coram Nobis relief is only

available if the petitioner is no longer in custody on the

challenged sentence.  Trenkler, 536 F.3d at 98 ("... the writ of

error coram nobis, in its modern form, is ordinarily available

only to a criminal defendant who is no longer in custody.")[5];

Sawyer, 239 F.3d at 37.[6]

---

[5]Trenkler indicated that coram nobis proceedings are ancillary to
criminal cases, and are appealable as civil matters.  Trenkler,
536 F.3d at 94-95.

[6]See United States v. Wheeler, 242 F.3d 385 (9th Cir.
2000)(unpublished decision)(coram nobis relief is available to a
petitioner who has fully served his sentence but suffers from
lingering collateral consequences as a result of an unlawful
conviction)

Finally, a writ of coram nobis is not available where other remedies exist, such as a motion under Section 2255 or a petition under Section 2241.  Tavares v. Massachusetts, 59 F. Supp. 2d 152, 155 (D. Mass. 1999).  It is also not available where other remedies would have existed "but for" the failure to raise the attack in a timely fashion, or where the attack is restricted as second or successive; the limitations provided in 28 U.S.C. § 2255 may not be evaded by the recourse to the general writ of coram nobis.  Rivera-Martinez v. Ashcroft, 389 F.3d 207, 209 (1st Cir. 2004); United States v. Barrett, 178 F.3d 34, 54 (1st Cir. 1999) (writ of coram nobis may not be used to circumvent the clear congressional directive embodied in the "second or successive" provisions of § 2255).  See Daniels v. United States, 532 U.S. 374 (2001)(prior conviction used to enhance a federal sentence under Armed Career Criminal Act is not open to collateral attack in its own right where defendant failed to pursue those remedies while they were available; defendant is without recourse).

Here, all parties concede that Bucci has served his sentence in Bucci I, and is only in custody under the Judgment imposed in Bucci II.  Thus, for purposes of determining whether he may seek coram nobis relief, the Court finds that § 2255 or § 2241 habeas relief is not available to him to challenge his conviction in

14

Bucci I, since he is not "in custody" for purposes of habeas relief. See Maleng v. Cook, 490 U.S. 488, 492 (1989) ("... once the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual "in custody" for the purposes of a habeas attack upon it."); Royal v. Pennsylvania, 2009 WL 331535, *4 (E.D. Pa. Feb. 10, 2009)("The United States Supreme Court has said that a *habeas* petitioner does not remain "in custody" under an expired sentence just because he has suffered from the "collateral consequence" of having a current sentence enhanced on the basis of the allegedly unconstitutional expired sentence.").[7] Moreover, the parties do not dispute that any motion pursuant to 28 U.S.C. § 2255 in Bucci I would be time barred, as beyond the limitations period set forth in § 2255.

In light of the above, the Court rejects the Government's position (*i.e.*, that Bucci is foreclosed from seeking coram nobis relief in Bucci I by virtue of the fact that he is still in federal custody), and will permit Bucci to assert his challenge to Bucci I via a petition for writ of coram nobis.

---

[7]Royal suggested, however, that under certain circumstances, such an attack could be construed by a *habeas* court as challenging the *subsequent* conviction on the basis that it was enhanced by the alleged invalid prior conviction. Royal, 2009 WL 331535 at *4. This Court makes no determination in this regard as to whether or not Bucci may make this argument in his § 2255 petition pending in Bucci II, as that motion is not before this Court.

C.   <u>Impact of Bucci I on Bucci II</u>

As noted above, the Government contends that, although Bucci's Criminal History Category in <u>Bucci II</u> increased from I to II as a result of <u>Bucci I</u>, this had only a minimal affect on his sentence in <u>Bucci II</u> because, although the guideline range increased from 151-188 months to 168-210 (a minimum increase of 17 months), Bucci's sentence fell within <u>both</u> guideline ranges using either a Criminal History Category I or II.

This position assumes that Bucci would not have been sentenced by Judge Lindsay at the lower end of the guideline range (*e.g.*, 151 months) and the contention that there was only a *de minimus* impact on Bucci is speculative and not supported by credible evidence.  Accordingly, the Court does not consider this argument as persuasive and will turn to the merits of Bucci's separate challenges to: (1) the Waiver; and (2) his guilty plea.

D.   <u>Validity of the Waiver of Indictment</u>

As noted above, Bucci contends that he did not knowingly waive his right to proceed by indictment, asserting violations of Fed. R. Civ. P. 7(b) with respect to the form of the Waiver and the oral advice given as to his right to proceed by indictment. He therefore contends this Court lacked subject matter jurisdiction over <u>Bucci I</u>.  The Government contends that the Waiver was valid since Rule 7(b) is silent as to the specific advice that must be given in open court to a defendant concerning

16

the nature of the charge and the defendant's rights in open court, and thus, the rule only requires that the waiver itself must be made in open court.  <u>United States v. Danou</u>, 260 Fed. Appx. 864, 867 (6th Cir. 2008)(unpublished decision).

In <u>Danou</u>, the Sixth Circuit Court of Appeals found that the district court did not err by not informing defendant of the nature of the charges and the right to proceed by indictment because there was no assertion that defense counsel had not provided this information to the defendant.  Here, however, Bucci claims he never discussed the issues raised by a waiver with Attorney Oteri.  Nevertheless, after review of the pleadings and the transcript of the Rule 11 hearing, this Court finds no inquiry of Attorney Oteri is necessary, and is satisfied that Bucci was adequately advised by this Court of his right to a grand jury indictment.  Further Bucci's assertions that the Court did not inquire into his understanding of the impact of the Waiver is deemed to be self-serving and misplaced particularly in view of the plea colloquy subsequently held after the Waiver was executed.  "Under Rule 7(b), ... courts have found that a waiver can be implied by a defendant's guilty-plea colloquy in open court."  <u>Short v. United States</u>, 471 F.3d 686 (6th Cir. 2006), <u>citing</u> <u>United States v. Gaudet</u>, 81 F.3d 585, 590-91 (5th Cir. 1996); <u>Ornelas v. United States</u>, 840 F.2d 890, 892 (11th Cir. 1988)(Rule 7(b) does not require an express waiver), <u>and</u> <u>United</u>

17

States v. Travis, 735 F.2d 1129, 1131-32 (9th Cir. 1984).  Thus,
even if this Court were to find technical defects in the Waiver
form itself, as Bucci contends, this does not undermine the fact
that the requirements of Rule 7(b) were met during the hearing.
He was orally informed of the charges against him in open court,
and, as the executed plea agreement reflects, the Information was
provided to him as an attachment.  Moreover, his failure to
object to the voluntariness of his waiver of indictment during
the course of the plea colloquy (specifically denying any threats
or promises for the plea), undermines his argument as it pertains
to this issue.

More importantly, in considering the totality of the
circumstances, the Court does not find that Bucci's challenges to
his waiver of indictment present extraordinary and compelling
reasons to warrant coram nobis relief at this juncture, where he
could have presented this claim at an earlier date.  While he
claims he did not discover this legal claim until his recent
discussion with a prison paralegal, he had ample opportunity to
make diligent efforts to discover any legal grounds for vacating
his conviction.  See Barreto-Barreto, et al. v. United States,
551 F.3d 95, 102-03 (1st Cir. 2008)(petitioner must explain
adequately, *inter alia*, the failure to seek relief earlier).  As
the Government correctly argues, it is not the date that Bucci
claims to have actually learned of his potential legal challenge

18

that controls; it is the date that the facts underlying the claim were known, or should be known, to the petitioner.  <u>Trenkler</u>, 536 F.3d at 99.   The Court agrees with the Government that Bucci knew or should have known the facts underlying his claim from "Day 1" and that this petition is untimely.

Finally, to the extent that Bucci contends that coram nobis relief is warranted because his defense counsel did not advise him of his rights regarding the waiver of indictment, this claim is not sufficient to justify coram nobis relief in this case, particularly where any failure to advise him of his rights was rectified by this Court's colloquy with Bucci at the hearing.[8] <u>See</u> <u>United States v. Lossia</u>, 2008 WL 4858411, *2 (E.D. Mich. 2008)("So long as someone informed [petitioner] of the charges and of his rights, he could validly waive prosecution by indictment."); <u>Enwonwu v. United States</u>, 199 Fed. Appx. 6, 7 (1st Cir. 2006)(unpublished decision) ("the only error [petitioner] relies upon is the purported ineffectiveness of his trial counsel.  This run-of-the-mill ground for collaterally attacking a conviction, even if meritorious, is hardly so extraordinary as to warrant coram nobis relief.").

---

[8] The transcript of the plea hearing reveals that the Court discussed the representation of Attorney Oteri and asked whether he realized he was giving up "very excellent counsel" by pleading guilty.  Transcript, Exh. A (Docket No. 42), page 12, lines 19-25; page 13, lines 1-4.

19

For these reasons, Bucci's claims challenging the waiver of indictment, and, concomitantly, this Court's subject matter jurisdiction over Bucci I, are rejected in their entirety. The Court concludes that this determination is warranted on the state of the pleadings, and no evidentiary hearing is necessary on this issue.

E.    Challenges to the Guilty Plea

Bucci's contentions with respect to the knowing and voluntariness of his guilty plea in Bucci I are a bit more problematic, but ultimately, they do not warrant coram nobis relief, for the reasons discussed below.

Bucci's assertion that he pled guilty to avoid the criminal prosecution of his mother is, in some respects, supported by credible evidence. The Affidavit of Attorney Terri Klug Cafazzo, indicates that during the course of his representation of Bucci, it was clear that he wanted to go to trial, but later changed his mind when Attorney Oteri advised him of the plea agreement terms, which included that his mother would not be prosecuted and that forfeiture of monies seized could not be challenged. Notwithstanding this statement of prior counsel, however, no such bargain appears in the plea agreement itself, nor was it brought to the Court's attention at the plea hearing.

The Government does not expressly address Bucci's evidence, but simply relies on the fact that Bucci never raised the issue

at the plea hearing or in a timely fashion thereafter, and that
the Bucci failed to show that the Government acted in bad faith
in the bargain.  The Government does not deny that such a bargain
was reached.

1.   The Plea Bargain is Not *Per Se* Impermissible

The Government is permitted to persuade a criminal defendant
into pleading guilty based on the promise that another person
will gain leniency in prosecution.  As a general rule, such
bargains do not render a guilty plea involuntary, so long as the
Government has a good faith basis for the prosecution of the
third party.  "A plea agreement containing such a condition is
proper so long as the government acts in good faith based upon
probable cause to file charges against or to prosecute the third
party named in the agreement."  United States v. Vest, 125 F.3d
676, 680 (8th Cir. 1997).  See Anderson v. United States, 2003 WL
21135556 (D. Minn. 2003)("... it is hardly 'novel' for a criminal
defendant to claim that his guilty plea was coerced by threats of
prosecution and promises of non-prosecution affecting the
defendant's family or friends.... Criminal defendants are
frequently motivated to plead guilty based on promises of
prosecutorial leniency toward some third party.  Plea agreements
that include such promises are often challenged, but seldom
overturned.").  "Only physical harm, threats of harassment,
misrepresentation or 'promises that are by their nature improper

21

as having no proper relationship to the prosecutor's business (*e.g.*, bribes)' render a guilty plea legally involuntary." United States v. Pollard, 959 F.2d 1011, 1021 (D.C. Cir. 1992) cert. denied, 506 U.S. 915 (1992).

In this case, there is no indication from the record that the Government did not act in good faith in entering a bargain with Bucci for the non-prosecution of his mother in exchange for his plea, and Bucci has offered no evidence from which this Court could reasonably infer that the Government acted in bad faith. Rather, the evidence suggests that the Government could have brought a case against Bucci's mother for money laundering. Moreover, even if an investigation of a third party has not yet produced sufficient evidence to yield probable cause, the prosecution could still offer to cease that investigation in exchange for a defendant's plea.  Miles v. Dorsey, 61 F.3d 1459, 1468, n.9 (10th Cir. 1995), cert. denied, 516 U.S. 1062 (1996). In short, there is nothing about the Government's conduct with respect to the plea agreement itself that would render Bucci's guilty plea involuntary or otherwise invalid as a matter of law.

2.   Bargain Not Contained in Written Plea Agreement
Nor Brought to the Court's Attention

Nevertheless, in this case, it is unclear whether or not the Government's offer to not prosecute Bucci's mother was, in fact, part of the plea agreement.  As noted above, this bargain is not

reflected in the written plea agreement, nor was it ever brought to the attention of the Court at the Rule 11 hearing by any of the parties or by defense counsel.  Bucci has put forward evidence to suggest that the matter of prosecution of his mother was a <u>key</u> factor in the decision to plead guilty.  Thus, if indeed part of the agreement was as he alleges, it should have been brought to this Court's attention by the Government at the time of the plea.[9]

Since the Government did not inform the Court of the fact of the plea bargain, this Court may not have had all of the information necessary to determine whether the guilty plea Bucci entered into was knowing and voluntary, and thus serious consideration must be given to Bucci's claims that his plea was coerced and therefore involuntary.

---

[9]The Government does not address this issue directly in its pleadings.  It is the prosecution's burden to disclose, in the first instance, the existence of such a plea condition.  <u>See</u> <u>United States v. Martinez-Molina</u>, 64 F.3d 719, 733 (1st Cir. 1995)("An undisclosed bargain such as the instant one carries with it a serious possibility of coerciveness.  This is why the prosecution must shoulder the burden of disclosing, in the first instance, all material information of plea agreements....");  <u>United States v. Abbott</u>, 241 F.3d 29, 37 (1st Cir. 2001) (Government's failure to bring to the judge's attention the fact that a package deal was involved that included the lenient sentencing of a relative rendered the plea colloquy under Rule 11 defective, and this was not harmless error; "[w]ithout this crucial information, the district judge could not adequately ascertain whether [defendant] was pleading guilty of his own volition or because of undue pressure to save his mother from prison.").

When determining the voluntariness of a guilty plea, "a court must consider the totality of the circumstances surrounding the plea." <u>Ferrara v. United States</u>, 456 F.3d 278, 290 (1st Cir. 2006); <u>see</u> <u>Brady v. United States</u>, 397 U.S. 742, 749 (1970).

>    3.   <u>Bucci Would Have Pled Guilty Even if Non-</u>
>         <u>Prosecution Bargain Was Disclosed to the Court</u>

Here, under the totality of the circumstances, the Court cannot find that Bucci would not have pled guilty if the agreement with respect to his mother was brought to the Court's attention at the time of the plea colloquy and had the matter been further explored in open court at that time.

First, Bucci affirmed under oath during the plea colloquy that he had not been influenced by anyone to enter his guilty plea.  "Solemn declarations in open court carry a strong presumption of verity." <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977).  Second, Bucci was represented by counsel when he entered his guilty plea and he also stated that the counsel had been satisfactory.  Third, Bucci made admissions during the plea colloquy from which the Court could find that he committed the crime with which he was charged.  These factors, when taken together, undermine Bucci's assertion that his plea was not voluntary.  <u>See</u> <u>Bordenkircher v. Hayes</u>, 434 U.S. 357, 363 (1978)("[d]efendants advised by competent counsel and protected by other procedural safeguards are presumptively capable of

intelligent choice in response to prosecutorial persuasion, and unlikely to be driven to false self-condemnation").[10]

Moreover, in determining whether or not a plea is voluntary under the circumstances, courts consider two factors: (1) the swiftness with which the challenge to the guilty plea was asserted; and (2) whether there were protestations of innocence. United States v. Barker, 514 F.2d 208, 222 (D.C. Cir. 1975) ("Whether the movant has asserted his legal innocence is an important factor to be weighed.").

With respect to the first factor, "[c]ourts have proved most sympathetic to motions to withdraw a guilty plea when those motions are made soon after entering the plea." United States v. Daniels, 821 F.2d 76, 79 (1st Cir. 1987). See Barker, 514 F.2d at 222 ("A swift change of heart is itself strong indication that the plea was entered in haste and confusion...."). In Bucci's case, however, he did not claim that his plea was coerced (on the basis that he was protecting his mother) until more than ten years after entry of the plea and after expiration of his criminal sentence. Bucci's claims that he did not discover that he could raise this challenge until his recent discussion with a prison paralegal are not only incredible, but immaterial to the

---

[10]Bucci makes an amorphous allegation that the Court should have held a competency hearing to determine if he was competent to enter a plea. The Court rejects this argument as the matter of his competency was never a *bona fide* issue in this case.

issue.  He certainly knew or should have known that he could have challenged the voluntariness of his plea at various stages: the moment it was entered; upon sentencing; on a direct appeal; or in a collateral attack under 28 U.S.C. § 2255.

Second, with respect to whether there was a protestation of innocence at the time of the plea, the Court finds that at no time during his plea colloquy did Bucci ever claim he was innocent in the matter.  The only issues raised related to drug quantity and use of a vehicle, but there was no reluctance on his part with respect to his commission of the crime charged; that was readily conceded.  Pollard, 959 F.2d at 1020 (where fact of commission of crime is not challenged, the Court is "not faced with the prospect that an innocent man was involuntarily compelled to plead guilty").

In view of the above, the Court considers that Bucci chose to plead guilty.  However improvident that decision turned out to be in retrospect and in light of his subsequent criminal conviction and enhanced sentencing, it does not render his guilty plea in 1997 invalid.  "If a defendant elects to sacrifice himself [to protect someone close to him], that is his choice, and he cannot reverse it after he is dissatisfied with his sentence, or with other subsequent developments." Kent v. United States, 272 F.2d 795, 798 (1st Cir. 1959).

F.   Neither Exceptional Circumstances Nor Sound Reasons
     For Delay Have Been Presented

     1.   The Petition is Untimely

As noted previously, this Court agrees with the Government that Bucci cannot adequately explain his failure to seek relief at an earlier point, and that it is too late to do so now. Although Bucci claims he did not know about the remedies available to him, the fact that he had a remedy available is what matters.  Trenkler, 536 F.3d at 99.

     2.   No Exceptional Circumstances Presented

Finally, Bucci's enhanced sentencing in Bucci II as a result of his conviction in Bucci I does not present extraordinary and compelling reasons warranting coram nobis relief.  While Bucci's "motive" for asserting his challenge to his expired conviction and sentence in Bucci I is clear, this does not constitute sound reasons for his failure to seek relief earlier, nor does it present the type of extreme case mandating vacation of the final judgment.  See Denedo, 129 S.Ct. at 2223.

Bucci argues that the enhancement of his sentence in Bucci II is extraordinary enough to invoke the writ of coram nobis, and that the enhanced sentence was a direct consequence of his entering of a guilty plea such that the Court should have notified him of that consequence.  These arguments are misplaced and contrary to established law.

27

a.   <u>Enhanced Sentence is Not a Direct Consequence</u>

Despite Bucci's contentions, this Court had no duty to inform him that pleading guilty to the charges in 1997 could enhance a future sentence in the event he was federally convicted of a subsequent crime.  <u>See</u> <u>United States v. Salmon</u>, 944 F.2d 1106, 1130 (3d Cir. 1991)(a court is not obligated to inform a defendant of an unforeseeable and collateral consequence).  A defendant need only be informed of the <u>direct</u> consequences of entering a guilty plea.  "Although a defendant must be informed of the "likely consequences" of pleading guilty, he does not need to be informed of all the possible consequences of a guilty plea.  Indeed, a defendant need only be 'fully aware of the direct consequences' of such a plea."  <u>Steele v. Murphy</u>, 365 F.3d 14, 17 (1st Cir. 2004)(quoting <u>Brady</u>, 397 U.S. at 755).  <u>See</u> <u>Bernard v. Duckworth</u>, 30 F.3d 136(7th Cir. 1994)(guilty plea not rendered invalid by court's failure to inform defendant of the collateral consequences of the plea).  "The distinction between direct and collateral consequences of a plea 'turns on whether the consequence represents a definite, immediate, and largely automatic effect on the range of a defendant's punishment.'"  <u>Steele</u>, 365 F.3d at 17 (quoting <u>United States v. Bouthot</u>, 878 F.2d 1506, 1511 (1st Cir. 1989)).

Bucci's enhanced sentence in <u>Bucci II</u> was in no way a "definite, immediate, [or] largely automatic effect" of his

28

pleading guilty in <u>Bucci I</u>.[11]   Rather, the effect of a conviction

on sentencing for a later offense has been viewed as a collateral

consequence.  <u>Salmon</u>, 944 F.2d at 1130 ("The effect of a

conviction on sentencing for a later offense under a career

offender law is such a collateral consequence.").

> b.   <u>Counsel's Failure to Inform of Collateral
> Consequences Does Not Render Plea Invalid</u>

To the extent that Bucci contends that his defense counsel

failed to advise him of the possibility that he could receive an

enhanced sentence if he committed future crimes, this failure,

even if true, would not justify coram nobis relief.  Bucci's

counsel was not required to inform him of a collateral

consequence such as enhanced sentences in the future.  <u>Santos-
Sanchez v. United States</u>, 548 F.3d 327, 332 (5th Cir.

2008)("counsel's failure to inform a defendant of the collateral

consequences of a guilty plea is never deficient

performance....").  <u>See</u> <u>United States v. Gonzalez</u>, 202 F.3d 20

(1st Cir. 2000)(counsel's failure to advise a defendant of a

collateral consequence is a legally insufficient ground for a

plea withdrawal); <u>United States v. George</u>, 869 F.2d 333, 337 (7th

Cir. 1989)(Sixth Amendment requirement of effective assistance of

---

[11]A Court would not presume that a defendant who is convicted of
one crime will commit, and be convicted of, future crimes that
might result in an enhanced sentence.  Such a presumption would
be abstract and speculative, and not definitive, automatic, or
immediate.

counsel in criminal prosecutions "does not extend to collateral aspects of the prosecution."); <u>United States v. Cariola</u>, 323 F.2d 180, 186 (3d Cir. 1963)(finality of conviction did not depend on the "contemporaneous realization" by defendant of the collateral consequences); <u>United States v. Parrino</u>, 212 F.2d 919, 921-922 (2d Cir. 1954)(same).

In light of all of the above, this Court finds that on the state of the record, summary dismissal of Bucci's petition is warranted; no evidentiary hearing with respect to Attorney Oteri's representation is required, nor does the issue of waiver of attorney-client privilege need to be explored.  The Court finds that under the totality of the circumstances, there was no fundamental error in Bucci's waiver of indictment or his entering of a guilty plea, nor is there any *bona fide* basis for finding that this case presents extraordinary or compelling circumstances warranting coram nobis relief.  Accordingly, Bucci's petition for writ of coram nobis shall be DENIED.

III.   CONCLUSION

For the foregoing reasons, defendant/petitioner Bucci's petition for writ of coram nobis (Docket No. 35) is DENIED.


SO ORDERED.                    /s/ Patti B. Saris
                               UNITED STATES DISTRICT JUDGE